UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br> Plaintiff, )<br>  )<br>V. )<br>  )<br>SIDNEY WAYNE FEE, JR., )<br>  )<br> Defendant. ) | Criminal Action No. 6: 05-92-DCR<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

During the summer of 2005, Defendant Sidney Wayne Fee, Jr., was employed by Jennifer Coffey to perform landscaping work on and around her property and other property owned by the Coffey family. However, while Ms. Coffey and some of her relatives were away on a church mission trip in July 2005, Fee stole several blank checks, firearms, and other items of personal property from the Coffeys. Upon investigation, it was determined that Fee pawned several of the items, including the stolen firearms, at various locations in the London, Kentucky, area. Fee confessed to the thefts during an interview with law enforcement officers on July 19, 2005. According to Fee, the items were stolen and sold for the purpose of obtaining money to finance his severe drug habit. In addition, Fee acknowledged that he was a prohibited from possessing firearms as a result of an earlier felony conviction.

Fee was subsequently indicted and entered a guilty plea in state court to three counts of criminal possession of a forged instrument. Thereafter, he was indicted by a federal grand jury sitting in London, Kentucky, and charged with possession of firearms by a convicted felon and

unlawful possession of stolen firearms. On July 17, 2006, Fee was sentenced to 36 months of imprisonment in this Court, to be followed by three years of supervised release. On October 29, 2007, Fee moved the Court to modify his federal sentence to give him credit for the time spent in state custody prior to his federal sentencing hearing pursuant to 18 U.S.C. § 3582(c)(2), United States Sentencing Guideline ("U.S.S.G.") §5G1.3, and Amendment 660.

Having reviewed Fee's request, the Court finds it to be without merit. Accordingly, the motion will be denied.

I.  **Relevant Facts**

A.  The Federal Charges

On December 22, 2005, a six count indictment was returned by a federal grand jury sitting in London, Kentucky. [Record No. 1] Counts 1, 3 and 5 charged Fee with possession of firearms by a convicted felon in violation of 18 U.S.C. 922(g)(1), while Counts 2, 4 and 6 charged him with possession of stolen firearms in violation of 18 U.S.C. § 922(j). At the time the indictment was returned, Fee was in state custody in connection with the other items of property he had stolen from the Coffeys. As a result, the United States obtained a writ of habeas corpus *ad prosequendum* directing the jailer of the Laurel County Detention Center to deliver Fee into the custody of the United States Marshal for the Eastern District of Kentucky. [Record Nos. 3 and 4]

Fee was arraigned before United States Magistrate Judge J. B. Johnson, Jr., on January 24, 2006.[1] His federal trial was scheduled to begin on March 28, 2006. However, on March 16,

---

[1]  The minutes of Fee's initial appearance before the United States Magistrate Judge indicate that it was unnecessary to address the issue of pretrial detention because the Defendant was being held in the Laurel

2006, Fee moved to be rearraigned for the purpose of entering a guilty plea to Counts 1, 3 and 5 of the federal indictment. [Record No. 11] Fee appeared with counsel on March 20, 2006, for the purpose of a change of plea.

In connection with the change-of-plea hearing, Fee executed a Plea Agreement containing the following factual statement:

> On July 18, 2005, Derek Coffey of Laurel County, Kentucky, which is located in the Eastern District of Kentucky, contacted special agent Tom Chittum of the Bureau of Alcohol, Tobacco, Firearms and Explosives to report a theft of five firearms from his home in London while he was away on vacation. Coffey stated that Sidney Fee did yard work for the family and that a set of keys to the house had been given to Fee. During the course of the investigation it was determined that on June 11, 2005, Fee had sold two of the firearms to Aunt Nettie's Trading Post in Laurel County, Kentucky, and that on July 7 and July 11, 2005, Fee had sold two of the remaining stolen firearms to Bacon Creek Gun Shop in Whitley County, Kentucky. The fifth stolen firearm was never recovered. During the course of the investigation it was also determined that Fee pawned a .40 caliber pistol which he took from his parents without their permission at Corbin Pawn Shop. Further investigation determined that at the time Fee possessed the firearms described above, he stood convicted in Laurel Circuit Court (Case Number 04-CR-272) of Criminal Mischief 1st Degree and Criminal Possession of a Forged Instrument 2nd Degree, both crimes punishable by imprisonment for a term exceeding one year. Finally, the investigation determined that each of the firearms possessed by Fee were [sic] manufactured outside the Commonwealth of Kentucky.

[Record No. 18] The Defendant's plea was accepted and Fee was adjudged guilty of the charges contained in Counts 1, 3 and 5 of the Indictment.

      B.    <u>The State Charges</u>[2]

---

County Detention Center. [Record No. 7]

[2] The facts relevant to disposition of the charges filed against Fee in state court are taken from Criminal History Section of his Presentence Investigation Report, ¶ 43. [*See* Record No. 20.]

As noted above, Fee was arrested for theft of personal property from the Coffeys on July 19, 2005. The case was originally charged in Laurel District Court under docket number 05-F-535. On October 21, 2005, a Laurel County grand jury returned a four-count indictment against Fee. Count one charged that, on or about June 3, 2005, Fee committed the offense of criminal possession of a forged instrument in the second degree by knowingly and unlawfully possessing and uttering a check bearing the forged signature of Derek Coffey. Counts two and three made similar allegations with respect to checks illegally forged and possessed on or about July 5 and 6, 2005, respectively. Count four charged that, on or about July 5, 2005, Fee committed the offense of being a persistent felony offender in the second degree.

Fee entered a guilty plea to counts one through three on December 22, 2005. On February 27, 2006, Fee was sentenced in the Laurel Circuit Court to four years of imprisonment on each count with each term to run concurrently with each other. In addition, although Fee's federal charges were not yet resolved, the Laurel Circuit Court directed that the state sentence should run concurrent with the matter pending in federal court (Case No. 6: 05-92-DCR). Fee was given credit for 218 days served, with costs of $123.30 and restitution of $4,260.00 imposed. Count four was dismissed by agreement.

      C.    The Federal Sentence

Fee was sentenced by this Court on his federal charges on July 17. 2006. In connection with the sentencing hearing, the United States Probation Office for the Eastern District of Kentucky prepared a Presentence Investigation Report ("PSR") containing a thorough outline

of the offense conduct, offense level calculations, criminal history and personal information concerning Fee. [Record No. 20]

Applying §2K2.1(a)(6) of the 2005 edition of the United States Sentencing Guidelines ("U.S.S.G."), Fee's Base Offense Level was determined to be 14. Under this section, a base offense level of 14 is applied if the defendant was a prohibited person at the time that the defendant committed the offense or the defendant was convicted under 18 U.S.C. §922(d). The base offense level was not increased by the charges underlying Fee's state conviction. However, his offense level was increased by two levels pursuant to §2K2.1(b)(1)(A), based on the number of firearms involved and two levels under §2K2.1(b)(4) because the subject firearms were stolen. [Record No. 20, ¶¶ 24-27] After applying a three level reduction for Fee's acceptance of responsibility, Fee's Total Offense Level was determined to be 15.

As set out in Part B of his PSR, Fee was assessed 13 criminal history points which placed him in Criminal History Category VI for sentencing purposes. [Record No. 20, ¶¶ 35-46] Therefore, Fee's guideline range of imprisonment was determined to be 41 to 51 months. [Record No. 20, ¶ 81][3] After hearing arguments of counsel[4], and considering the fact that Fee had

---

[3] Pursuant to 18 U.S.C. §3583(b)(2), Fee also faced a maximum term of supervised release of no more than three years.

[4] During the sentencing hearing, Fee's attorney asked the Court to vary from the guideline range and impose a sentence of 36 months of imprisonment. In addition, he asked that the Defendant's federal sentence be ordered to run concurrent with the remainder of his state sentence. Although confessing some ignorance of what would happen due to the fact that Fee was appearing in federal court for sentencing pursuant to a writ, counsel stated that, because Fee might be returned to state custody to serve the remainder of a four-year term, this Court should also direct that his federal sentence should run concurrent with his state sentence. Otherwise, he argued, the return of the Defendant to state custody might stop his federal sentence from running altogether.

Counsel for the United States was asked to address the issue of a concurrent versus a consecutive

been incarcerated since July 2005, Fee was sentenced to 36 months of imprisonment on each count of conviction to run concurrently, and three years of supervised release. Likewise, due to Fee's drug addiction, the Court recommended that the Defendant participate in the Bureau of Prison's intensive drug education and treatment program. Finally, the Court noted that the Defendant's total term of 36 months of imprisonment should run concurrent to any undischarged state term. [Record No. 19]

## II.     Legal Analysis

On October 29, 2007, over 15 months after he was sentenced, Fee moved the Court to modify his sentence pursuant to 18 U.S.C. §3582(c)(2) and Amendment 660 to the United States Sentencing Guidelines. Fee argues that he is entitled to be given credit for the time spent in state custody toward his federal sentence under Amendment 660 and U.S.S.G. §5G1.3.

The United States filed its response to Fee's motion on November 7, 2007. [Record No. 24] In relevant part, the United States argues that the Defendant's motion is misplaced because no state crimes were: (1) considered as relevant conduct or (2) taken into account in determining the Fee's offense level. Further, a possible four-level enhancement was not applied under

---

sentence. In addition to also asking the Court to impose a variance from the guideline range below the term suggested by Fee's counsel (*i.e.*, the U.S. asked for a sentence of 21 to 27 months of imprisonment), the Assistant United States Attorney stated that, because the Bureau of Prisons would not designate the Defendant to begin service of his federal sentence until his state sentence was completed, a concurrent sentence would be appropriate. After considering the Defendant's guideline range and the factors set forth in 18 U.S.C. §3553(a), the Court imposed a sentence of 36 months of imprisonment. The Court intend this to be 36 month period to be *in addition to* the time previously served for the state conviction. When the sentence was announced, the Court specifically referred to U.S.S.G. §5G1.3 and 18 U.S.C. §3584.

U.S.S.G. 2K2.1(b)(5).[5] Therefore, it asserts that modification of the Defendant's sentence is not appropriate under U.S.S.G. 5G1.3.

      A.      U.S.S.G. §5G1.3 (2005)

Section 5G1.3 of the 2005 edition of the sentencing guidelines has three subsections. The complete section states as follows:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term or imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) or §1B1.3 (Relevant Conduct) *and* that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>>
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense maybe imposed to run concurrently, partially concurrently, or consecutively to the prior

---

[5] While the United States cites §2K2.1(b)(6), it appears that it intended to refer to §2K2.1(b)(5) of the 2005 edition of the sentencing guidelines. This section applies if the Defendant possessed a firearm in connection with another felony offense. If applicable, a four level increase would be applied with a minimum offense level of 18. This section was moved from subsection (b)(5) to (b)(6) in the 2006 edition of the sentencing guidelines.

-7-

> undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

(Emphasis added.)  U.S.S.G. §5G1.3 (2005).

Subsection (a) applies when the offense of conviction was committed while the defendant was serving an undischarged term of imprisonment or after sentencing for, but before commencing service of, such term of imprisonment. The Defendant does not assert that this section – which would dictate a consecutive sentence – is applicable. Instead, he appears to contend that subsection (b) is applicable but was not applied.

Contrary to Fee's assertions, subsection (b) was considered but does not apply under the facts presented. Under this subsection, the prior (state) offense constitutes relevant conduct under U.S.S.G. §1B1.3. However, the state conviction did not result in an increase in his offense level under Chapter Two (Offense Conduct) or Chapter Three (Adjustments). Instead, his Base Offense Level was determined based *solely* upon his possession of firearms and not upon his possession of other items stolen from the Coffeys' properties.

As outlined in paragraph 25 of Fee's PSR, under §2K2.1(a)(6), the guideline applicable to a violation of 18 U.S.C. §922(g)(1) [*i.e.*, felon in possession of firearms], a base offense level of 14 is applied if the Defendant was a "prohibited person" at the time of the offense.[6] Fee cannot assert that he received an increase in his offense level under Chapter Two (Offense Conduct) for his state offenses. Instead, his only Chapter Two increase was based upon the number of firearms and the fact that the firearms involved in the federal conviction had been stolen. See U.S.S.G. §§2K2.1(b)(1) and 2K2.1(b)(4). Likewise, Fee did not receive an increase

---

[6] It is undisputed that Fee was a prohibited person as defined in 18 U.S.C. §922(g).

to his Base Offense Level under Chapter Three. And as the United States points out in its response to Fee's motion, the Defendant did not receive a four level enhancement under §2K2.1(b)(5) for possessing the stolen firearms in connection with another felony offense.

In short, Fee's argument that U.S.S.G. §5G1.3(b) applies (or was not considered) is misplaced. Instead, under U.S.S.G. 5G1.3(c), the Defendant's sentence under the sentencing guidelines could be imposed to run "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. Here, in applying this section, the Court was aware of the term Fee had served in connection with his state conviction. In sentencing Fee, the Court intended that he serve an additional thirty-six months of imprisonment. However, if he were returned to state custody following the federal sentencing hearing as counsel had suggested, the Court intended that Fee's federal sentence begin to run as well. Therefore, pursuant to the specific language of U.S.S.G. §5G1.3(c), the Court directed that the federal sentence run concurrent with the *remaining, undischarged* state sentence.

### B. Amendment 660 to U.S.S.G. §5G1.3

"A district court may modify a sentence already imposed only in extremely limited circumstances." *United States v. Vicol*, 460 F.3d 693, 697 (6th Cir. 2006). Under 18 U.S.C. §3582(c)(2), a court may modify a sentence if the relevant guideline sentence range has been lowered by the Sentencing Commission. However, this provision is inapplicable to Fee. Effective November 1, 2003, Amendment 660 to U.S.S.G. §5G1.3 altered the prior version of

subsection (b) to include the language set forth above.[7] This post-amendment version of U.S.S.G. §5G1.3 was applied to Fee in calculating his guideline range. Because the 2005 edition of the guidelines were applied (as opposed to the version in effect prior to November 1, 2003), the Defendant's apparent claim that Amendment 660 has the effect of lowering his guideline range is incorrect.

### III. Conclusion

For the reasons discussed above, it is hereby

**ORDERED** that the Defendant's motion for modification of his sentence [Record No. 22] is **DENIED**.

This 27th day of November, 2007.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

[7] Prior to November 1, 2003, U.S.S.G. §5G1.3(b) provided:

> If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term or imprisonment.